Patrick **WAGNER**, Petitioner

v.

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE**, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 30, 2004.

Decided April 1, 2004.

Joseph J. Hylan, Norristown, for petitioner.

Chad L. Allensworth, Harrisburg, for respondent.

BEFORE: PELLEGRINI, Judge, and COHN, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge COHN.

In this appeal, we are asked to consider whether a parolee is entitled to credit on his maximum sentence for time spent, while on parole at a community corrections center, in an inpatient program. Patrick Wagner (Wagner) appeals the order of the Pennsylvania Board of Probation and Parole (Board) denying him credit because it determined that the conditions at the facility were not so restrictive an environment that it constituted confinement.

The relevant facts of the case are as follows. Wagner was originally sentenced to a term of not less than five years to not more than 15 years with an original maximum expiration date of April 18, 2004. The Board paroled Wagner on January 12, 2000 to the Diagnostic and Rehabilitation Center (DRC) in Philadelphia in its inpatient program. He was required to participate in an inpatient drug/alcohol program for at least six months as a condition of his

parole. In July 2000, he was placed in the outpatient program at the DRC and moved to an approved residence in Philadelphia.[1] While on parole, Wagner was arrested on new criminal charges and for parole violations. After a violation and revocation hearing, Wagner was recommitted to a state correctional institution as both a convicted and technical parole violator to serve a total of 12 months backtime concurrently, when available. The Board finalized this recommitment action and recalculated Wagner's parole violation maximum date to June 8, 2006.

Wagner appealed this decision on the basis that he was entitled to credit for the six months he spent in the DRC inpatient program. A hearing examiner held an evidentiary hearing to determine the custodial nature of the DRC and to determine whether Wagner was entitled to credit for time spent at the DRC while on parole. The hearing examiner took testimony from Parole Agent Clinton Canada and Theodora Austin, who is an employee of the DRC. Agent Canada testified that during the day none of the doors at the DRC are locked and, at night, the doors are locked from the outside, but have a push bar on them, which gives anyone inside the facility the ability to exit. Agent Canada stated that people leave the DRC all the time, and he was "always making absconding reports because people walk out" of there. (N.T. at 7.) The DRC has a visitor log for internal control purposes. Agent Canada stated that no force is used by the DRC staff to restrain residents from leaving, that the staff members are trained as counselors and not law enforcement officers and, therefore, have no authority to "take any offensive force" against a resident. (N.T. at 10.) Finally, he stated that there are no bars on the windows, but admitted that

---

1. The exact date in July 2000 when Wagner was moved to the outpatient program is not of record. Wagner does not seek credit for time spent in the outpatient program.

head counts and oversight of the residents occur for internal control purposes.

Ms. Austin testified that the doors to the DRC are not kept locked. While residents are escorted by DRC personnel to the outside during fire drills, under normal circumstances, they are able to leave on passes simply by signing out and do not have to be escorted. She admitted that residents have simply walked out of the DRC without properly signing out with a pass. Further, she stated that if a resident chose to leave, no DRC personnel would stop him or her because the residents cannot be held "against their own free will." (N.T. at 17.) If a violation of DRC rules does occur, residents are punished by having passes withheld. She stated that visitors are required to sign the visitor log. As to whether the DRC had bars on its windows, she stated that there were no bars, but some of them had screens on them. However, she said that any resident could get out most of the windows including those on the first floor. Ms. Austin also admitted that head counts and night checks occur regularly.

In support of his appeal, Wagner testified that the front door of the DRC was always open, but was monitored 24 hours a day by the staff. He was able to leave the premises only if he had permission or a pass and that, if a resident tried to leave, he or she would be stopped by DRC personnel and given a restriction, thus, losing any privileges. Wagner stated that he believed that all the doors at the DRC were alarmed and, although he could open his window, it was surrounded by a cage on the outside so that he could not leave the building this way.

■ Following the evidentiary hearing, the hearing examiner concluded that the "DRC inpatient C[ommunity] C[orrections] C[enter] is not a prison, there are no physical barriers to leaving and man[y] parolees have left without permission." (Hearing Report, p. 2.) The hearing examiner based this finding on the testimony of Agent Canada and Ms. Austin. The Board issued a decision, mailed June 17, 2003, concluding that "the circumstances at Diagnostic Rehabilitation Center were not so restrictive as to permit the parolee to receive credit on his sentence for time spent there while on parole." (Notice of Board Decision, p. 1.) Wagner then filed a request for administrative relief, which the Board denied. This appeal followed.[2]

■ Wagner's sole issue on appeal is whether the Board acted arbitrarily or abused its discretion in determining that he is not entitled to credit against his maximum sentence for the six months he spent in the inpatient program at the DRC due to the restrictive nature of the facility.

Section 21.1a(a) of what is commonly known as the Parole Act,[3] authorizes the Board to recommit any parolee who, "during the period of parole ... commits a crime punishable by imprisonment, from which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter...." If a parolee is recommitted, he is required to serve the remainder of his term of imprisonment, which he would have had to serve if he had not been paroled, and is given no credit for time spent "at liberty on parole." *Id.*

2. A reviewing court will not interfere with the Board's determination of this issue unless it acts arbitrarily or plainly abuses its discretion. *Cox v. Pennsylvania Board of Probation and Parole*, 507 Pa. 614, 493 A.2d 680 (1985).

3. Act of August 6, 1941, P.L. 861, *added by* Section 5 of the Act of August 24, 1951, P.L. 1401, 61 P.S. § 331.21a(a).

While the Parole Act does not define the phrase "at liberty on parole," in *Cox v. Pennsylvania Board of Probation and Parole*, 507 Pa. 614, 493 A.2d 680 (1985), our Supreme Court defined the phrase to mean "not liberty from all confinement but at liberty from confinement on the particular sentence for which the convict is being reentered as a parole violator." *Id.* at 618, 493 A.2d at 683 (quoting *Haun v. Cavell*, 190 Pa.Super. 346, 154 A.2d 257, 261 (1959)). In *Cox*, the Supreme Court was asked to address whether the parolee was entitled to credit for time spent in a drug/alcohol inpatient program. The Court, ultimately, remanded the case back to the Board for further factual findings as to the nature of the drug/alcohol treatment facility in question and whether the restrictions on the appellant's liberty were the equivalent of incarceration. The Court held that, on remand, the parolee had the burden to establish that the conditions of the inpatient treatment program were so restrictive to his liberty that he was entitled to credit on his sentence for the time spent there.

Subsequently, in *Jackson v. Pennsylvania Board of Probation and Parole*, 130 Pa.Cmwlth. 527, 568 A.2d 1004 (1990), this Court was presented with the opportunity to determine whether an inpatient treatment program was sufficiently restrictive so as to permit credit for the time served there. Concluding that the Board's determination that it was not so restrictive was correct, we noted that the facility was not secure: the doors were not locked, there was no fencing around the facility and, if a parolee left the confines of the facility, the personnel only notified the parole authorities. Consequently, the inpatient program did not have sufficient custodial aspects to characterize the time spent there as confinement.

Most recently, we examined this same issue in *Willis v. Pennsylvania Board of Probation and Parole*, 842 A.2d 490 (Pa. Cmwlth.2004.) In that case, we held that the Board properly determined that the treatment facility was not so restrictive that it constituted confinement, based on evidence that the residents of the facility were not confined against their will and could leave at any time. In addition, the front door was unlocked and there was no fence around the facility that would prevent a resident from leaving. Further, residents who left the facility were not charged with the crime of escape and staff members were not trained to stop the residents from leaving. Consequently, we concluded that circumstances at this facility were not so restrictive as to permit awarding credit to the parolee's original sentence.

A different situation is presented where a parolee is in "pre-release" status, rather than on parole. In *McMillian v. Pennsylvania Board of Probation and Parole*, 824 A.2d 350 (Pa.Cmwlth.2003), we reversed the Board and found that the parolee who was in "pre-release" status was entitled to credit for the time he spent at a community corrections center. Even the director of the facility referred to the parolees as "inmates." In making the distinction between inmates in "pre-release" status, that is, inmates who are placed in a facility by the Pennsylvania Department of Corrections (DOC), and parolees, the director noted that the facility filed reports with DOC when an inmate, who is in "pre-release" status rather than on parole, left without permission or failed to participate in its mandatory programs. However, for inmates who are actual parolees, the facility filed reports with the Board. Additionally, the evidence indicated that inmates at the center were subject to a 72–hour processing period during which they were not permitted to leave the facility, were re-

quired to comply with the facility's rules and regulations, including mandatory participation in all programs, and received leisure time based on their status and behavior. As a result, we reversed the Board and held that because McMillian was in "pre-release" status and, thus, the prison authorities exercised control over him, the circumstances at the facility were sufficiently restrictive so that they constituted confinement. Therefore, McMillian was entitled to credit for time served there.

Unlike McMillian, Wagner was not in "pre-release" status, but had actually been released on parole while he resided at the DRC. Therefore, this case is governed by *Jackson* and *Willis,* and not *McMillian.* As in *Jackson* and *Willis,* Wagner had actually been released on parole during the time for which he wishes to be credited. Similar to those cases, here too, the Board found that the doors to the DRC were not locked during the day and that they were locked only from the outside at night, thus, allowing anyone inside to leave by merely pushing the door open. Although there was a monitor at the front door at all times, this was for the purpose of signing residents and visitors in and out of the facility and to keep track of who was in the facility. Residents were able to leave the DRC unescorted on passes. The windows to the facility were not covered by bars. Most of them opened, even those on the first floor, and any resident could have easily left the premises through a window. Furthermore, the staff members at the DRC were trained as counselors and not law enforcement officers and, therefore, could not restrain any resident from leaving, but would only report to the parole authorities if a resident left without properly signing out and without a pass. Consequently, based on this evidence, we believe the Board correctly concluded that the conditions under which Wagner resid-

ed at the DRC were not so restrictive as to constitute custodial confinement. Therefore, he was not entitled to receive credit toward his maximum sentence for the six months he spent there.

Accordingly, based on the foregoing opinion, we affirm the order of the Board.

### ORDER

**NOW,** April 1, 2004, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is hereby affirmed.