**Alan T. HOUSER, Petitioner**

**v.**

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 22, 2005.

Decided May 25, 2005.

Gregory L. Cecchetti, Greensburg, for petitioner.

Arthur R. Thomas, Asst. Counsel and Victoria S. Freimuth, Chief Counsel, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, PELLEGRINI, Judge, and COHN JUBELIRER, Judge.

OPINION BY Judge COHN JUBELIRER.

Alan T. Houser (Petitioner) petitions this Court for review of the denial of his request for administrative relief. Petitioner asserts that the Pennsylvania Board of Probation and Parole (Board) erred in denying him credit for the 60 days he spent in Renewal Inc. Drug and Alcohol Inpatient Program (Renewal). At issue is whether Renewal's restrictions on Petitioner were so onerous that he was not "at liberty on parole," thus entitling him to credit toward his maximum sentence.

On October 1, 2001, the Board reparoled Petitioner from an aggregated 15 year state prison sentence for burglary, aggravated assault and robbery, with a special parole condition that required him to live at Renewal for ninety days to complete the inpatient program. On November 30, 2001, Petitioner abandoned Renewal without permission and the Board declared him delinquent. Thereafter, the Board recommitted Petitioner as a direct violator. By order mailed June 2, 2004, the Board recalculated his maximum term to expire on July 17, 2004 for his original 15 year state prison sentence. The recalculation order did not commute Petitioner's sentence of total confinement of 60 days to reflect the time he lived at Renewal from October 1, 2001 to November 30, 2001.

Petitioner appealed this recalculation order, claiming an entitlement to credit for the 60 days spent at Renewal. On August 24, 2004, the Board conducted an evidentiary hearing for the purpose of determining "the custody nature of the inpatient program at Renewal from October 1 of 2001 until November 30, 2001." (N.T., O.R. at 58.) The hearing examiner took testimony from Petitioner and Morris Richardson, case manager and supervisor at Renewal. Richardson testified that the doors are not locked or alarmed, there are no bars on the windows, and no fences surrounding the building to keep the parolees in Renewal. *Id.* at 67–68. He further testified that nothing prevents a parolee from leaving the facility, and if a parolee does leave, he is not regarded as having "escaped." *Id.* at 68. In fact, Richardson explained that Petitioner had passes to go home and to work outside the facility without an escort. *Id.* He further indicated that employees would monitor who was coming in and going out of Renewal and would report if any parolees absconded from the facility. *Id.* at 70–71. Petitioner's testimony conflicted with that of Richardson. Petitioner stated that: he was closely monitored; he had to sign out to leave the facility; headcounts were taken by Renewal; permission to leave was required; he could not drink alcohol while at Renewal; and, he needed to be at the facility by a certain time. *Id.* at 60–63. However, he did not contest that he was given passes to go home and work outside the facility, while never having to be escorted when he would leave Renewal. *Id.* at 64–65.

Following the evidentiary hearing, the Board entered an order stating that Petitioner had not: 1) "rebutted the presumption that he was at liberty on parole during his attendance at the Renewal program"; 2) "[met] his burden of producing evidence to prove that specific characteristics of the Renewal program constituted restrictions on his liberty sufficient to warrant credit on the sentence from which he was on parole during his attendance"; and, 3) "persuaded the Board that specific characteristics of the Renewal program constituted restrictions on his liberty sufficient to warrant credit...." (Notice of

Board Decision, O.R. at 76.) Based on these findings, it denied him the sixty-day credit. In ruling as it did, the Board relied on the testimony of Richardson.[1] Petitioner filed another petition for administrative relief, which the Board denied. (O.R. at 78, 80.) He now appeals to this Court.[2]

■ We begin our analysis with Section 21.1a(a) of what is commonly known as the Parole Act.[3] Section 21.1a(a) authorizes the Board to recommit a parolee who, "during the period of parole ... commits any crime punishable by imprisonment, from which he is convicted or found guilty by a judge or jury or to which he pleads guilty or *nolo contendere* at any time thereafter. . . ." If the Board recommits a parolee under this provision, he is required to serve the remaining term of imprisonment he would have had to serve if he had not been paroled, and is given no credit for time spent *"at liberty on parole." Id.* (Emphasis added.) The Parole Act does not define the phrase "at liberty on parole." However, in *Cox v. Pennsylvania Bd. of Probation and Parole*, 507 Pa. 614, 493 A.2d 680 (1985), the Supreme Court of Pennsylvania explained that "at liberty on parole" means "not at liberty from all confinement but at liberty from confinement on the particular sentence for which the convict is being reentered as a parole violator." *Id.* at 618, 493 A.2d at 683 (quoting *Haun v. Cavell,* 190 Pa.Super. 346, 154 A.2d 257, 261 (1959), *cert. denied,* 363 U.S. 855, 80 S.Ct. 1618, 4 L.Ed.2d 1737 (1960)). The Court, after remanding the case to the

Board for further factual findings as to the nature of the treatment facility in question, held that, on remand, the parolee had the burden to establish that the conditions of the treatment facility were so restrictive to his liberty that he was entitled to credit on his sentence for the time spent there. *Id.* at 620, 493 A.2d at 683.

Since *Cox,* this Court, on several occasions, has considered the issue of whether various facilities were so restrictive in nature as to qualify as "custodial" for purposes of awarding credit. *See Jackson v. Pennsylvania Bd. of Probation and Parole,* 130 Pa.Cmwlth. 527, 568 A.2d 1004 (1990)(affirming the Board's denial of credit based on the evidence that the facility doors were not locked, the facility had no fences and did nothing to prevent a patient from leaving, and that if a parolee left the facility, parole authorities were notified); *Willis v. Pennsylvania Bd. of Probation and Parole,* 842 A.2d 490 (Pa.Cmwlth.2004)(affirming the Board's denial of credit based on evidence that residents of the facility were not locked in, they could have walked out, and if they did walk out, no one would try to stop them nor would they be charged with escape). The case *sub judice* fits neatly into this category.

This case is similar to our recent case of *Wagner v. Pennsylvania Bd. of Probation and Parole,* 846 A.2d 187 (Pa.Cmwlth. 2004), where we held that the petitioner's facility was not so restrictive as to constitute custodial confinement and, therefore, denied his entitlement to receive credit for

---

**1.** The Board is the fact finder and, as such, it evaluates witness credibility, resolves conflicts in the evidence and assigns evidentiary weight. *Sigafoos v. Pennsylvania Bd. of Probation and Parole,* 94 Pa.Cmwlth. 454, 503 A.2d 1076, 1080 (1986).

**2.** "A reviewing court will not interfere with the Board's determination of this issue unless

it acts arbitrarily or plainly abuses its discretion." *Wagner v. Pennsylvania Bd. of Probation and Parole,* 846 A.2d 187, 189 n. 2 (Pa. Cmwlth.2004).

**3.** Act of August 6, 1941, P.L. 861, *added by* Section 5 of the Act of August 24, 1951, P.L. 1401, *as amended,* 61 P.S. § 331.21a(a).

time spent there. In *Wagner*, the Board found that: doors to the facility were not locked during the day, and were locked only from the outside at night, thus, allowing anyone in the facility to leave; there was a monitor at the front door at all times for the purpose of keeping track as to who was in the facility; residents were able to leave the facility unescorted on passes; windows were not covered with bars; and, staff members were trained as counselors, not law enforcement, and could not restrain any resident from leaving the facility. The staff members would only report to parole authorities if a resident left without properly signing out and without a pass. *Wagner*, 846 A.2d at 191.

In comparison, the conditions in this case are much less restrictive than the facts in *Torres v. Pennsylvania Bd. of Probation and Parole*, 861 A.2d 394 (Pa. Cmwlth.2004). In *Torres*, the petitioner was *forbidden* to leave his facility for the first forty-five days of his stay and was under 24–hour supervision during that time. Moreover, he was *not permitted* to make required trips outside the facility *without an escort* for that initial period of time. Because of these restrictions, we reversed the Board and held that the petitioner was not at "liberty on parole" during that period of time and awarded him credit. *Id.* at 401. We also noted in *Torres* that "[a]lthough no formulation will apply to all potential individual circumstances, the facts in *Jackson*; *Meehan*[4] and *Wagner* demonstrate that ordinary restrictions such as those that attend many inpatient treatment programs are not so onerous as to require a credit." *Id.* at 400 (footnote added).

This case is in line with *Wagner*; *Jackson*; *Willis* and *Meehan*, because the Board found that Petitioner admitted to: working outside the facility; going home with a pass without being escorted; and, being permitted to walk out of the facility at any time without being stopped. In fact, Petitioner actually left the facility before successful completion of the program without being criminally charged for the escape. Moreover, the credited evidence of Richardson indicates that: 1) the doors were not locked; 2) there were no bars over the windows or fences surrounding the facility to keep residents inside; 3) the monitor at the front door was there to track who was coming in and out of the facility; and, 4) the staff members, who only referred to the residents as "parolees" and not "inmates," would not restrain the parolees from leaving but, rather, would notify the Board. Based on the evidence, we believe the Board correctly concluded that Petitioner did not meet his burden of producing evidence to prove that specific characteristics of the Renewal program constituted restrictions on his liberty sufficient to warrant credit on the sentence from which he was on parole during his attendance.

Accordingly, based on the foregoing opinion, we affirm the order of the Board.

## *O R D E R*

**NOW**, May 25, 2005, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is hereby affirmed.

---

4. *Meehan v. Pennsylvania Bd. of Probation and Parole*, 808 A.2d 313 (Pa.Cmwlth.2002)(affirming the Board's denial of credit based on evidence that, although the residents were closely monitored, parolees could have walked out the door and no one on staff was allowed to restrain anyone who left; and, if a parolee left, it would not be an escape but rather absconding on parole).