Clifford L. DETAR, Jr., Petitioner

v.

**PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 14, 2005.
Decided Jan. 3, 2006.

Clifford L. Detar, Jr., petitioner, pro se.

Arthur R. Thomas, Asst. Counsel and Victoria S. Freimuth, Chief Counsel, Harrisburg, for respondent.

BEFORE: COLINS, President Judge, and SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Clifford L. Detar, Jr., *pro se*, petitions for review of a decision of the Pennsylvania Board of Probation and Parole (Board) denying Detar's request for credit toward his recalculated sentence. Detar contends that the Board erred in failing to grant him credit for time spent at the Gateway Rehabilitation Center. We are asked to consider whether the conditions at Gateway were sufficiently custodial in nature that Detar should be given credit on his sentence for time spent at Gateway.

Detar was serving several concurrent seven-year state prison sentences for theft and several concurrent eight-year state prison sentences for burglary at SCI–Waynesburg when the Board released him on parole on August 21, 2000. One of the conditions of Detar's parole was that he enter an in-patient drug and alcohol treatment program. Consistent with his parole

order, Detar was released to Gateway, and after he successfully completed the program, he was discharged.

On June 9, 2002, Detar was arrested. Thereafter, he was recommitted as a technical and convicted parole violator, with a maximum term of expiry of June 3, 2006, for three of Detar's concurrent eight-year state prison sentences for burglary. In calculating the new sentence date of June 3, 2006, the Board did not give Detar credit for time spent at Gateway, and Detar appealed, asserting that the period of time he spent at Gateway from August 21, 2000, through December 18, 2000, was sufficiently restrictive and custodial to warrant credit for 119 days.

At the Board hearing on his appeal, Detar and Daniel Kownacki, an assistant director of Gateway, each testified about the conditions at Gateway. The facts to emerge from their testimony are as follows.

Gateway has two buildings, an in-patient facility and a work release center. While enrolled in the in-patient program, residents are under 24–hour supervision. However, they are allowed to leave the facility to get cash at ATM machines, to go shopping, to do a "DPW run," to spend one or two hours at the gym, and to attend offsite religious services. They are driven to and from these places by Gateway staff. Residents who leave the facility for doctor visits or hospitalizations may make their own arrangements for transportation.

The in-patient facility has locks on the doors, but their purpose is not to prevent people from leaving, but from entering. Cameras monitor the doors. The facility is surrounded by a six-foot wooden fence, and residents pass in and out through an unlocked gate. There are no bars on the windows of residents' rooms; the windows have locks but they can be opened by the residents. The windows in the bathrooms, the counseling office and a "brief" room do have bars. The staff is instructed not to restrain residents if they attempt to leave. If a resident does leave the program, the staff notifies the local police or the parole office, if the resident is a parolee.

In the work release facility, conditions are less structured. Residents come and go from the facility on their own with a pass.[1] When off premises, residents are subject to location checks to confirm that the resident is where he is supposed to be; side trips are not authorized. Upon return to the facility, residents are required to blow into a breathalyzer. Residents are expected to hold jobs, which include community service. While living at the work release facility, residents may attend one religious service per week outside the Gateway grounds.

Of his 119 days at Gateway, Detar's time was divided. He spent 45 days in the in-patient program, and he spent 64 days in the work release program. Mr. Kownacki was present at Gateway during 7 of the 64 days Detar was in the work release center.[2]

---

1. The work release center is not fenced.

2. Daniel Kownacki did not join Gateway until the final 7 days of Detar's stay. Detar contends that the Board's findings about Gateway are not supported by substantial evidence because Kownacki was not present at the facility for the other 112 days of Detar's residency. Detar's challenge goes to the weight of Kownacki's testimony. As questions of evidentia-

ry weight and credibility are within the province of the Board, *Pastuszek v. Pennsylvania Board of Probation and Parole*, 118 Pa. Cmwlth. 6, 544 A.2d 1051, 1053 (1988), we can find no error. More to the point, if we were to exclude Kownacki's testimony, which is what Detar appears to suggest, there would be virtually no evidence to support Detar's contention that the conditions at Gateway were so restrictive as to constitute custody,

At the conclusion of the hearing, the hearing examiner found that none of Detar's time spent at Gateway was equivalent to incarceration and recommended that Detar be denied credit for the time spent there. The Board adopted the hearing examiner's recommendation and denied Detar's administrative appeal. Detar then sought this Court's review.

Detar presents one issue for our consideration.[3] He argues that he is entitled to credit for his entire stay at Gateway because the program was restrictive and custodial in nature.[4] He notes that Gateway is a "community correction center," which by its very name denotes a "minimum security" facility where pre-release inmates may be placed to serve some of their sentence. Accordingly, Detar argues that any time spent in any program at Gateway is the equivalent of incarceration. *See* 37 Pa.Code § 91.1; 37 Pa.Code § 94.2.[5]

Section 21.1a[6] of the statute commonly known as the Parole Act, Act of August 6, 1941, P.L. 861, *as amended,* 61 P.S. § 331.21a, generally authorizes the Board to recommit the parolees. It states, in relevant part, that a parolee who "during the period of parole ... commits any crime punishable by imprisonment, from which he is convicted or found guilty by a judge or jury or to which he pleads guilty or nolo contendere at any time thereafter in a court of record, may, at the discretion of the Board, be recommitted as a parole violator." 61 P.S. § 331.21a(a). If a parolee is recommitted under this section of the Parole Act, he must serve the remainder of his term of imprisonment he would have had to serve had he not been paroled and does not receive credit for time spent "at liberty on parole." *Id.*

The Parole Act does not define "at liberty on parole," which was considered, and interpreted, by our Supreme Court in *Cox v. Pennsylvania Board of Probation and Parole,* 507 Pa. 614, 493 A.2d 680 (1985). The term had long been interpreted to mean "street time," and in *Cox,* the Supreme Court clarified that "street time" was not to be construed literally. It explained that "at liberty" does not mean freedom from each and every type of confinement. *Id.* at 619, 493 A.2d at 683 (citations omitted).[7] The Supreme Court

---

because Kownacki provided the evidence on which Detar's arguments rely.

3. This Court's scope of review of a decision by the Board is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether the constitutional rights of the parolee was violated. *Willis v. Pennsylvania Board of Probation and Parole,* 842 A.2d 490, 492 n. 1 (Pa.Cmwlth.2004).

4. Detar asserts that he spent 48 days in the inpatient program because he waited three days to be transferred to work release. The record does not support this claim.

5. 37 Pa.Code § 91.1 defines a "community corrections center" as a "minimum-security community-oriented facility operated or contracted by the Department for the purpose of facilitating special programs." 37 Pa.Code § 94.2 describes "community corrections center residency" as,

a program operated as a continuum of the rehabilitative services provided in the facilities. Community corrections centers are residences in the community with custodial structure and strong emphasis on guidance and counseling. These centers serve those inmates who qualify and who should benefit from a gradual reintegration into society.

6. Section 21.1a was added by Section 5 of the Act of August 24, 1951, P.L. 1401, *as amended,* 61 P.S. § 331.21a.

7. The Court noted that while a convict may be on parole from a particular offense, he might be confined in prison for another offense, in a mental institution or in an enemy prison camp during a war. While not literally "at liberty," that parolee would not be entitled to

declined to conclude that "confinement" in an in-patient rehabilitation program was the equivalent of incarceration, thereby entitling the parolee to credit for time spent in the program. Because the record lacked evidence about the nature of the rehabilitation program at Eagleville Hospital, the Supreme Court remanded for the Board to adduce facts. Ultimately, the program was found not to be the equivalent of incarceration.

In *Jackson v. Pennsylvania Board of Probation and Parole*, 130 Pa.Cmwlth. 527, 568 A.2d 1004 (1990), this Court examined whether an in-patient treatment program at Eagleville Hospital was sufficiently restrictive so as to permit credit for time in the program. We concluded that the program did not have "sufficient custodial aspects to characterize the time spent there as confinement rather than at liberty." *Id.* at 1006. Critical to this conclusion were the following facts:

> Eagleville Hospital is not a secure facility. The doors to the hospital are not locked, there is no fencing around the facility, and the hospital does nothing to stop the patients from leaving. Additionally, the hospital does not treat parolees differently than other patients with the exception that, if a parolee were to leave the hospital before completing the program, the hospital would notify the parole authorities.

credit on his sentence for these types of confinement.

**8.** *See also Wagner v. Pennsylvania Board of Probation and Parole*, 846 A.2d 187 (Pa. Cmwlth.2004) (holding that time spent at a facility was not the functional equivalent of incarceration where no force would be used to restrain anyone who left without permission and where staff members were counselors and not law officers).

**9.** *See also McMillian v. Pennsylvania Board of Probation and Parole*, 824 A.2d 350 (Pa.

*Id.* Being able to leave the hospital without restraint was dispositive.

In *Willis v. Pennsylvania Board of Probation and Parole*, 842 A.2d 490 (Pa. Cmwlth.2004), this Court considered whether the in-patient drug and alcohol program at Gateway was sufficiently custodial to be characterized as incarceration. This is the very same program we consider in this appeal. The facts critical to our decision in *Willis* were as follows: residents were not locked in; no one would try to stop a resident who walked out; and residents who left without permission would not be charged criminally with escape.[8] We held that the confinement in Gateway not sufficiently custodial to characterize time spent there as incarceration, in spite of Willis' protest that he could not leave "on his own accord." *Id.* at 491.

More recently, however, in *Torres v. Pennsylvania Board of Probation and Parole*, 861 A.2d 394 (Pa.Cmwlth.2004), this Court, in an *en banc* decision, reversed the Board's denial of credit for 45 days that a parolee spent at an in-patient rehabilitation center known as Conestoga.[9] The evidence showed that the parolee was confined at Conestoga except to attend weekly "meetings approved or ordered" and "under the supervision of [facility] staff." *Torres*, 861 A.2d at 400. We concluded that Torres was entitled to credit for time in this program, explaining as follows:

Cmwlth.2003). This Court reversed the Board and held that the parolee who was in "pre-release" status was entitled to credit for the time he spent at a community corrections center. The evidence showed that there was a 72–hour processing period during which the parolees were not permitted to leave the facility at all. A parolee in "pre-release status" was not technically on parole, and the director of the facility referred to its residents as "inmates." The extent of control exercised over the parolee at the center was found to be the functional equivalent of incarceration.

[A] parolee who has been forbidden generally to leave a particular inpatient drug and alcohol rehabilitation facility for a specified period for which credit is sought, who is under 24–hour supervision during the specified period and who is not permitted to make required trips outside of the facility without an escort cannot reasonably be described as being "at liberty on parole."

*Id.* at 401 (footnote omitted). Thus, this Court reversed the Board, holding that the drug and alcohol program at Conestoga was the equivalent of incarceration.[10] Notably, *Torres* did not overrule *Willis*.

*Willis* is binding here. In *Willis*, we found Gateway's 45–day drug and alcohol program not sufficiently custodial to entitle Willis to credit for time spent in the program. Detar presented no evidence that in the past year, since our ruling in *Willis*, the program at Gateway has changed and become more restrictive. To the extent additional facts about the Gateway program have been developed in this case, they only provide further support for the conclusion that the Gateway program does not constitute incarceration. In *Willis*, it was claimed that residents could not leave "on their own." In this case, we learned that residents do leave Gateway for reasons other than to attend meetings. They leave, on their own steam, for medical visits; they visit the mall, the bank, the gym and church. Staff drive residents to these off-site activities. No new evidence was presented in this case showing that Gateway is more restrictive than was understood when our decision in *Willis* was rendered; indeed, the evidence is to the contrary.

Every in-patient hospitalization, for treatment of any kind, involves 24–hour supervision that may be viewed by the patient as confining. *Cox* teaches that "at liberty on parole" does not mean that the parolee is literally "on the street." To the contrary, it teaches that "at liberty on parole" may encompass a variety of confinements. Whether one is undergoing drug and alcohol rehabilitation at the Betty Ford Clinic or at a community corrections center, that individual may find the experience confining. We learned from *Cox*, however, mere confinement does not render parole *not* at liberty. The inquiry is a factual one, but the most important factor is whether the patient, or resident, is locked in and whether the patient may leave without being physically restrained.

In *Willis*, we held that the in-patient drug and alcohol program at Gateway was not the functional equivalent of incarceration.[11] We are bound by the holding in *Willis*. Because the record here provides only more support for that holding, we affirm the Board's denial of Detar's appeal.

President Judge COLINS dissents.

10. In finding the inpatient drug and alcohol program at Conewago to be the equivalent of incarceration, we noted Torres' evaluation of the program. He testified as follows:

It's like a state correctional facility because I'm over there with the state inmates another fellow and we don't go anywhere except inside the building—meetings. We don't go anywhere else. Meetings outside the community [are] under staff supervision. It's 24/7 inside the facility.

*Torres,* 861 A.2d at 400. This does not mean that an individual's subjective impression is dispositive of the question of whether confinement is the equivalent of incarceration. The testimony of Torres merely confirmed the objective factors that led the Court to conclude that time spent at Conewago was incarceration.

11. Because we decide Detar is not entitled to credit for 45 days spent in rehabilitation, the most restrictive part of his stay, *a fortiori* he is not entitled to credit for time spent in the work release center.

## ORDER

AND NOW, this 3rd day of January, 2006, the order of the Pennsylvania Board of Probation and Parole dated January 31, 2005, in the above-captioned matter is affirmed.