Ismael FIGUEROA, Petitioner

v.

PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 27, 2006.

Decided March 30, 2006.

Publication Ordered June 12, 2006.

Donald T. Gibboney, Clearfield, for petitioner.

Chad L. Allensworth, Asst. Counsel and Victoria S. Freimuth, Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, COHN JUBELIRER, Judge, and LEAVITT, Judge.

OPINION BY Judge LEAVITT.

Ismael Figueroa petitions for review of a decision of the Pennsylvania Board of Probation and Parole (Board) denying his request for credit toward his recalculated sentence. Figueroa contends that the Board erred in failing to grant him credit for a portion of the time he resided at the Joseph E. Coleman Center, a privately run community corrections center in Philadelphia. We are asked to consider whether the conditions at the Center were sufficiently custodial to support Figueroa's claim for credit toward his sentence.

In April 1995, Figueroa was sentenced to a term of imprisonment of four to ten years following his conviction for robbery. His maximum release date was March 25, 2005. Figueroa was paroled on February 21, 2001, and declared delinquent for technical parole violations in April 2001. He was recommitted and ordered to serve nine months backtime, resulting in a new maximum release date of April 6, 2005. Figueroa was reparoled on November 18, 2002, to "a community corrections center with drug/alcohol." Certified Record at 20 (C.R.—). Accordingly, as a special condition of his reparole, Figueroa was directed to report to the Center and "successfully complete the program offered there; any discharge other than a successful one will be a violation of parole." C.R. 23.[1]

---

1. The Court takes judicial notice of the following description of the Center, as found on the website of the Pennsylvania Department of Corrections:

   [The Coleman Center] provides transitional services to residents referred by the PA Dept. of Corrections and/or the PA Board of Probation and Parole. Residents are transferred either from state correctional institutions or from the community. [The Coleman Center] offers services to residents in need of work-release programming and/or mental health services. Residents who have violated Conditions of Parole Release may also participate as Half–Way Back residents. Separately, the facility offers a secure program for Technical Parole Violators in need of alternative sanctioning within the community. The Pennsylvania Alternative to Prison Placement (Penn-CAPP) program offers residents a comprehensive 5 day program in which life skills, substance abuse education and programming aimed at criminal-thinking.
   http://www.cor.state.pa.us/ccc/cwp/view.asp?a=385&q=132177.

On or about May 12, 2003, Figueroa was arrested in Philadelphia and convicted of new criminal charges. The Board recommitted Figueroa as a convicted parole violator and recalculated his maximum term of expiry to be August 11, 2006. Figueroa filed a *pro se* petition for administrative review alleging, *inter alia*, that the Board erred by failing to credit him for the first 90 days he resided at the Center, which he refers to as a "blackout period." The parties proceeded to an evidentiary hearing on that issue on April 7, 2005.

Figueroa testified before the hearing examiner in support of his claim that he was in custody during the 90–day blackout period. Figueroa stated that during this time he attended programs and meetings and ate all of his meals at the Center. He claimed that whenever he left to attend a medical appointment he was escorted to and from the facility. Figueroa averred that he would have been stopped if he had attempted to leave without an escort. He testified that the doors at the Center are locked, there are no windows and the facility is surrounded by a fence.

Kelly Roscoe, a unit manager at the Center, testified that the Department of Corrections does not run the Center but contracts with the Center to house parolees and pre-release inmates. Roscoe also described the conditions at the Center. He explained that the doors to the building are locked "to keep visitors out and [to] monitor those going in and out of the

facility." C.R. 41. According to Roscoe, the fence to which Figueroa referred is also intended to keep out unauthorized visitors and is erected only around the recreational areas. Roscoe stated that if a parolee attempted to leave the Center, he would be advised to return and, if he resisted, his parole agent would be notified. Staff members do not physically restrain the residents, and no parolee has ever been charged with escape after exiting the center. Roscoe testified that during the blackout period parolees are permitted to leave the facility, unescorted, in order to take care of personal obligations such as seeking employment or obtaining funds for fines, costs and restitution. As a parolee, Figueroa would have had these same privileges, and Roscoe recalled that Figueroa left the Center unescorted on at least one occasion, although he could not recall the date.

■ Based upon the evidence adduced at the hearing, the Board found that Figueroa had failed to prove that the specific characteristics of the Center constituted restrictions on his liberty sufficient to warrant credit toward his sentence. The Board denied Figueroa's administrative appeal from that decision. Figueroa then sought this Court's review.[2]

■ Before this Court, Figueroa argues that he is entitled to credit for his entire stay at the Center or, alternatively, for the initial 90–day blackout period.[3] In support

2. Our review is limited to determining whether the Board's findings are supported by substantial evidence, are in accordance with the law and whether constitutional rights have been violated. *Weigle v. Pennsylvania Board of Probation and Parole*, 886 A.2d 1183, 1185 n. 1 (Pa.Cmwlth.2005). This Court will not interfere with the Board's determination unless it acts arbitrarily or plainly abuses its discretion. *Wagner v. Pennsylvania Board of Probation and Parole*, 846 A.2d 187, 189 n. 2 (Pa.Cmwlth.2004).

3. The Board argues that Figueroa has failed to specify the length of time for which he seeks credit, and asks this Court to quash the present appeal pursuant to PA. R.A.P. 1513(d) (requiring a petition for review to contain, *inter alia*, "a short statement of the relief sought."). We decline to do so. The transcript of the hearing reveals that Figueroa sought credit for the 90–day blackout period beginning on November 28, 2002, since that was purportedly the most restrictive part of his stay. C.R. 39. Because we find that the

of his claims, Figueroa asserts that the following factors constituted sufficient restraints on his liberty: the doors and windows at the Center are locked; he took all of his meals at the center; he was escorted whenever he left the facility; and the Center houses pre-release inmates as well as parolees pursuant to a contract with the Department of Corrections. Figueroa contends that the foregoing factors are analogous to those at issue in two prior decisions of this Court which granted a petitioner's request for credit: *McMillian v. Pennsylvania Board of Probation and Parole*, 824 A.2d 350 (Pa.Cmwlth.2003), and *Torres v. Pennsylvania Board of Probation and Parole*, 861 A.2d 394 (Pa. Cmwlth.2004).

Section 21.1a of the act commonly known as the Parole Act (Act)[4] provides, in relevant part, that the Board has the authority to recommit a parolee who "during the period of parole ... commits any crime punishable by imprisonment, from which he is convicted or found guilty by a judge or jury." 61 P.S. § 331.21a(a). If a parolee is recommitted under this section of the Parole Act, he must serve the remainder of the term of imprisonment he would have had to serve had he not been paroled, and does not receive credit for time spent "at liberty on parole." *Id.*

The phrase "at liberty on parole" is not defined in the Act. In *Cox v. Pennsylvania Board of Probation and Parole*, 507 Pa. 614, 493 A.2d 680 (1985), our Supreme Court explained that "at liberty on parole" means "not at liberty from all confinement but at *liberty from confinement on the particular sentence for which the convict is being reentered as a parole violator.*" *Id.* at 619, 493 A.2d at 683 (citations omitted) (emphasis in original). The Court further explained that the burden is on a parolee to establish the specific characteristics of a program that constitute restrictions on his liberty sufficient to warrant credit on his recomputed backtime, and persuade the Board of that fact. *Id.* at 620, 493 A.2d at 683.

■ A review of the relevant case law reveals that the entitlement to credit based on the restrictions placed upon a parolee is very fact-specific. Notably, an individual's subjective impression of those restrictions is not dispositive of the question of whether confinement is the equivalent of incarceration. *Detar v. Pennsylvania Board of Probation and Parole*, 890 A.2d 27, 31 n. 10 (Pa.Cmwlth.2006). The most important factors are "whether the patient, or resident, is locked in and whether the patient may leave without being physically restrained." *Id.* at 31 (citing *Cox* ).

In this case, we agree with the Board's determination that Figueroa was not constructively incarcerated during the initial 90–day blackout period. Although the doors to the Center are locked, this is only to prevent unauthorized visitors from entering, not to prevent the residents from leaving. Staff members do not physically restrain the residents, nor are the residents charged with escape if they leave the facility.[5] According to the Center's unit

conditions placed upon Figueroa during the blackout period were not sufficiently restrictive to warrant credit against his recomputed sentence, *a fortiori* he is not entitled to credit for the remainder of his stay at the Center.

4. Act of August 6, 1941, P.L. 861, *as amended*, 61· P.S. § 331.21a. Section 21.1a was added

by Section 5 of the Act of August 24, 1951, P.L. 1401.

5. Although leaving the Center may have constituted a violation of Figueroa's parole, and resulted in his arrest, that characteristic does not elevate his residency at the Center to incarceration or detention. Such a result is no different than that which would occur if a

manager, the residents are, in fact, permitted to leave unescorted during the blackout period to attend to personal business. Although Figueroa may have perceived the restrictions as confining, his subjective impressions are irrelevant, and the fact that he may have chosen not to exercise his right to leave the facility without an escort in no way strengthens his claim that he was in custody.

Figueroa cites to two decisions of this Court as support for his position. In the first of these cases, *McMillian v. Pennsylvania Board of Probation and Parole*, 824 A.2d 350 (Pa.Cmwlth.2003), we found that the conditions at the Capitol Pavilion Community Corrections Center were sufficiently restrictive so as to constitute custody for purposes of time credit under Section 9760 of the Sentencing Code, 42 Pa.C.S. § 9760. However, in a subsequent decision, this Court limited the applicability of *McMillian* to the situation where the petitioner is in pre-release status rather than on parole. *Wagner v. Pennsylvania Board of Probation and Parole*, 846 A.2d 187 (Pa.Cmwlth.2004). *See also Weigle*, 886 A.2d at 1189 (noting limitation on applicability of *McMillian*). This is an important distinction since a convict on pre-release status is under the jurisdiction of the Department of Corrections, not the Board. In this case, Figueroa's parole agent confirmed that he was placed at the Center as a condition of his parole, not as a pre-release prisoner. N.T. 15. Therefore, *McMillian* has no application here.

The second case on which Figueroa relies is factually distinguishable. In *Torres v. Pennsylvania Board of Probation and Parole*, 861 A.2d 394 (Pa.Cmwlth.2004), the petitioner was released on parole to the Conewago–Wernersville inpatient drug and alcohol rehabilitation facility. This

Court ultimately determined that Torres was entitled to credit for his initial 45–day blackout period. Crucial to our decision was the testimony of Conewago's executive director, which "confirmed Torres' testimony that for the first forty-five days of treatment Torres was allowed to leave the premises only to attend meetings approved or ordered by Conewago; these trips occurred weekly and were under the supervision of Conewago staff." *Id.* at 400. Thus, we held that "a parolee who has been forbidden generally to leave a particular inpatient drug and alcohol rehabilitation facility for a specified period for which credit is sought ... and who is not permitted to make required trips outside of the facility without an escort cannot reasonably be described as being 'at liberty on parole.'" *Id.* at 401.

In the instant case, Figueroa's claim that he could not leave the Center without an escort was specifically rebutted by the unit manager, who testified that all residents, including Figueroa, may leave unescorted during the blackout period to take care of personal business. It was within the province of the Board, as fact finder, to assess the credibility of witnesses and assign the appropriate weight to their testimony. *Detar*, 890 A.2d at 28 n. 2. We may not revisit those factual determinations because they are supported by substantial evidence.

For the foregoing reasons, we agree with the Board's determination that Figueroa is not entitled to credit toward his recalculated sentence for any of the time he resided at the Center, including the initial 90–day blackout period. Accordingly, we affirm the decision of the Board.

### ORDER

AND NOW, this 30th day of March, 2006, the order of the Pennsylvania Board

---

parolee "on the street" violated any condition of his parole. *See Willis v. Pennsylvania*

*Board of Probation and Parole,* 842 A.2d 490, 494 (Pa.Cmwlth.2004).

of Probation and Parole dated May 4, 2005, in the above-captioned matter is AFFIRMED.