Frank McNALLY, Petitioner

v.

PENNSYLVANIA BOARD
OF PROBATION AND
PAROLE, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 5, 2007.
Decided Jan. 24, 2008.

---

Nicole Denise Sloane, Asst. Public Defender, Erie, for petitioner.

Arthur R. Thomas, Asst. Counsel and Victoria S. Madden, Chief Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Frank McNally petitions for review of the denial of his request for administrative relief. McNally asserts that the Pennsylvania Board of Probation and Parole (Board) erred in denying him credit for time spent in the Renewal, Inc. drug and alcohol inpatient treatment program (Renewal), and that the Board erred in its computation of the date on which McNally's back time service was to begin. We vacate and remand.

On July 29, 2004, McNally was reparoled[1] from a state prison sentence of 24 years, at which time his maximum term

---

**1.** Prior to this date, McNally had been incarcerated, paroled, and required to attend various treatment and counseling programs. McNally then was again arrested, plead guilty to additional criminal charges, and recommitted to serve twelve months back time. None of these prior events are at issue herein.

expiration date was June 1, 2011. As one of the special conditions of his parole, McNally was initially referred to, and subsequently required to attend, drug use monitoring and outpatient counseling. McNally did not successfully complete those requirements, and he repeatedly tested positive for cocaine use, including two positive results on August 27 and October 31, 2005.

As a result, McNally was required to attend the Renewal drug and alcohol inpatient program, which he entered on November 1, 2005, and was discharged from, following his completion of the program, on December 15, 2005.

Thereafter, McNally again tested positive for cocaine use, and subsequently failed to report to his parole agent as requested. On May 19, 2006, McNally was declared delinquent. On May 26, 2006, McNally's parole agent was notified by the Conneaut, Ohio Police Department that McNally had been arrested for possession of illegal drugs and associated paraphernalia. On June 5, 2006, McNally plead no contest to one drug offense in an Ohio court. On June 9, 2006, McNally was served by the Board with a Notice of Charges and Hearing in relation to his alleged parole violations.

On June 19, 2006, a hearing was held before a Hearing Examiner on McNally's parole violation charges. At that hearing, McNally admitted violations of his parole conditions including failure to report to his parole agent, leaving the district without permission, possessing narcotics and controlled substances, testing positive for cocaine use, and failing to pay a required monthly supervision fee. Additionally, McNally admitted to his new conviction resulting from his drug charge in Ohio.

Thereafter, in a combined revocation decision and recalculation order dated August 28, 2006, the Board recommitted McNally to a state correctional institution for twelve months as a technical parole violator, and six additional months as a convicted parole violator to be served consecutively, and announced a recalculated maximum term date of May 14, 2013.

On September 27, 2006, McNally filed a Petition for Administrative Appeal of the Board's decision (Petition). Therein, McNally sought, in part relevant to the instant appeal, credit towards his original sentence for the period of forty-five days that McNally spent in the Renewal inpatient treatment center. Specifically, McNally alleged in his Petition that the forty-five days were considered a "blackout period" in which he was restricted to the Renewal building "with other state inmates on pre-release, he was escorted by staff any time leaving the building, [Renewal] has routine D.O.C. Counts, and [McNally] was buzzed in and out of the building therefore restricting his movement." Original Record (O.R.) at 67–68. McNally further sought credit for time detained on the Board's warrant beginning on June 7, 2006, the date on which McNally alleges that he was returned to the custody of the Board after serving his time for his sentence on the Ohio criminal charges.

The Board did not hold a hearing on McNally's appeal, and did not receive any additional evidence thereon. By letter dated October 26, 2006, the Board affirmed its August 28, 2006 decision and order. Therein, the Board concluded that McNally had become available to serve his back time on July 12, 2006, the date on which "the Board obtained the necessary signatures to recommit [McNally] as a parole violator." Original Record (O.R.) at 72. The Board further concluded that McNally was not entitled to credit for his time spent at the Renewal center because Commonwealth Court precedent had previously concluded that the characteristics of that program were not equivalent to incarcera-

tion, with the Board concluding that our precedent controlled under the instant facts. *Id.* at 73. McNally now petitions for review of the Board's decision.

■ Our scope of review of a Board decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether the constitutional rights of the parolee were violated. *Detar v. Pennsylvania Board of Probation and Parole,* 890 A.2d 27 (Pa.Cmwlth.2006).

■ Our courts have previously addressed the issue of whether various treatment facilities were of such a restrictive character as to qualify as equivalent to incarceration for purposes of awarding credit to sentences. As we have summarized:

> We begin our analysis with Section 21.1a(a) of what is commonly known as the Parole Act.[3] Section 21.1a(a) authorizes the Board to recommit a parolee who, "during the period of parole ... commits any crime punishable by imprisonment, from which he is convicted or found guilty by a judge or jury or to which he pleads guilty or *nolo contendere* at any time thereafter...." If the Board recommits a parolee under this provision, he is required to serve the remaining term of imprisonment he would have had to serve if he had not been paroled, and is given no credit for time spent *"at liberty on parole."* [*61 P.S. § 331.21a(a)* ] (*Emphasis added.*) The Parole Act does not define the phrase "at liberty on parole." However, in *Cox v. Pennsylvania Board of Probation and Parole,* 507 Pa. 614, 493 A.2d 680 (1985), the Supreme Court of Pennsylvania explained that "at liberty on parole" means "not at liberty from all confinement but at liberty from confinement on the particular sentence for which the convict is being reentered as a parole violator." *Id.* at 618, 493 A.2d at

683 (*quoting Haun v. Cavell,* 190 Pa.Super. 346, 154 A.2d 257, 261 (1959), cert. denied, 363 U.S. 855, 80 S.Ct. 1618, 4 L.Ed.2d 1737 (1960)). The Court, after remanding the case to the Board for further factual findings as to the nature of the treatment facility in question, held that, on remand, the parolee had the burden to establish that the conditions of the treatment facility were so restrictive to his liberty that he was entitled to credit on his sentence for the time spent there. *Id.* at 620, 493 A.2d at 683.

---

[3.] Act of August 6, 1941, P.L. 861, *added by* Section 5 of the Act of August 24, 1951, P.L. 1401, *as amended,* 61 P.S. § 331.21a(a).

*Houser v. Pennsylvania Board of Probation and Parole,* 874 A.2d 1276 (Pa. Cmwlth.), *petition for allowance of appeal denied,* 586 Pa. 716, 889 A.2d 1218 (2005).

In relation to the issue of his requested credit for his time spent in the Renewal center, McNally alleges that the forty-five days spent therein were akin to being in prison, in that those forty-five days were a blackout period in which he was restricted to the Renewal building, that he was housed with other state inmates and was escorted by staff any time that he left the building, and that he was buzzed in and out of the building therefore restricting his movement. McNally has further alleged that he was continually restricted to a locked building, and that he was subject to routine body counts.

The Board argues that *Houser* controls. In *Houser,* we addressed the specific issue of credit to be afforded to a parolee who had spent time in the Renewal inpatient program. At an evidentiary hearing before the Board on the issue of the custodial conditions at Renewal, Houser introduced evidence regarding the conditions at Renewal, including evidence that nothing prevented him from leaving that program, that the doors were not locked, that any patient leaving was merely reported as

having absconded, that he was given passes to go home and to go to work, and that he was never escorted when he would leave Renewal. *Houser*, 874 A.2d at 1277. We held that the conditions described at Renewal, as established in the testimony to the Board in the hearing before them, did not satisfy Houser's burden to establish characteristics of the program constituting restrictions on his liberty sufficient to warrant credit on his sentence. *Id.* at 1279.

The Board further argues that our decision in *Detar* renders *Houser* controlling on the issue of whether the conditions at Renewal, under the instant facts, are a prison equivalent with restrictions insufficient to warrant sentence credit. In *Detar*, the Board also held an evidentiary hearing regarding the custodial conditions at a treatment program, namely, the Gateway Rehabilitation Center. Following the receipt of Detar's evidence regarding the conditions at Gateway, we first noted that we had examined the conditions at Gateway in a prior case, and had found those conditions not sufficiently custodial to entitle the parolee to credit spent for time in that program. *See Willis v. Pennsylvania Board of Probation and Parole*, 842 A.2d 490 (Pa.Cmwlth.2004). Emphasizing that the parolee in *Detar* had presented no evidence that the conditions at Gateway differed or had changed since our analysis in *Willis*, and noting that the evidence presented at the hearing thereon before the Board actually provided further support for the conclusion that the conditions of the Gateway program did not constitute incarceration, we found that we were bound by our holding in *Willis*, and affirmed the Board's denial of the parolee's appeal based upon the support in the record developed before the Board on the issue. *Detar*, 890 A.2d at 30–31.

In the matter *sub judice*, the Board argues that under *Detar*, our conclusions regarding the nature of the Renewal program reached in *Houser* control, and that therefor McNally is not entitled to the requested credit under *Houser's* holding. We disagree.

In *Cox*, our Supreme Court emphasized that the record, on appellate review, must enable the reviewing court to adequately address the factual question of the custodial conditions at issue:

> We are therefore left with the need for a factual determination as to the nature of the Eagleville program and whether the restrictions on appellant's liberty there were the equivalent of incarceration entitling him to credit for the time spent in the program.

> \* \* \*

> Any effort to review this factual question now is defeated by the inadequate record before us … It is appellant's burden, on remand, to show the specific characteristics of the Eagleville program that constituted restrictions on his liberty sufficient to warrant credit on his recomputed backtime, and persuade the Board of that fact … [T]he Board must help in providing a record which makes effective appellate review possible.

*Cox*, 507 Pa. at 619–620, 493 A.2d at 683. We note that in *Cox*, while the Board did conduct the required parole violation and revocation hearing, no hearing was held on, and thus no inquiry was made as to, the nature of the custodial characteristics of the treatment program at issue in the wake of the Board's recalculation and recommitment order. The same set of procedural facts is present in the instant matter, and as was the Supreme Court in *Cox*, this Court is unable in this matter to review the characteristics of the Renewal program as alleged by McNally.

*Houser* and *Detar* do not control the instant matter. In both of those prece-

dents, the Board conducted a hearing to determine the custodial characteristics of the treatment program at issue prior to determining whether the parolee was entitled to credit for time served thereat. It is only after reviewing the evidence of the program's characteristics offered by the parolee in *Detar* that we concluded that our prior holding in *Willis* was controlling as to the conditions examined at the treatment program that was at issue in both of those cases.

The conditions at Renewal that we reviewed in *Houser* are not identical to those alleged by McNally in the instant matter; most notably, McNally alleges, *inter alia,* that he was continually restricted to a locked building, that he was housed with other inmates, and that he was escorted by staff whenever he left the building. These allegations are directly contrary to some of the dispositive characteristics of Renewal as we reviewed them under the record developed in *Houser.*[2] Since McNally was never afforded any opportunity to present evidence as to the conditions at Renewal during his stay— unlike the parolees in *Houser, Willis,* and *Detar,*—we are unable to effectively conduct appellate review in this matter with-

out the benefit of a record developed before the Board. In order to affect such review, McNally must be given the opportunity to meet his burden of producing evidence to establish the custodial nature to which he was subjected during his stay at Renewal. *Cox.*

Accordingly, we vacate the Board's order, and remand this matter for further proceedings consistent with the foregoing analysis.[3]

### *ORDER*

AND NOW, this 24th day of January, 2008, the order of the Pennsylvania Board of Probation and Parole in the above-captioned matter is vacated, and the matter remanded for additional proceedings in accordance with the foregoing opinion. On remand, Frank McNally's sentence shall be credited with thirty-seven days for the conceded time served in which he was confined solely on the warrant of the Board of Probation and Parole for the period from June 5, 2006, to July 12, 2006.

Jurisdiction relinquished.

**2.** In *Torres v. Pennsylvania Board of Probation and Parole,* 861 A.2d 394 (Pa.Cmwlth.2004), we held an inpatient drug treatment program sufficiently constituted such restrictions on liberty as to require credit towards a sentence on recommitment where the program included, *inter alia,* a forty-five day blackout period, in which period a parolee was housed with other state inmates, was restricted to a locked building, and was required to be under supervision if permitted outside of the building.

**3.** In the instant appeal, McNally also presents the issue of whether the Board erred in establishing the date that his back time would

begin as July 12, 2006, the date on which the Board elected to obtain the necessary signatures for its recommitment following the completion of McNally's Ohio sentence. McNally seeks credit for the time detained on the Board's warrant beginning on the date on which McNally was returned to the custody of the Board. It its brief to this Court, the Board concedes that McNally's sentence should be credited with thirty-seven days that he was confined solely on its warrant, from June 5 to July 12, 2006. As such, our remand includes instruction that McNally be credited with the time as conceded by the Board.