# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Robinson,  :
          Petitioner  :
  :
      v.  :   No. 236 C.D. 2019
  :   Submitted: September 13, 2019
  :
Pennsylvania Board of Probation  :
and Parole,  :
          Respondent  :

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
              HONORABLE MIACHAEL H. WOJCIK, Judge
              HONORABLE ROBERT SIMPSON, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY SENIOR JUDGE SIMPSON**        **FILED: November 21, 2019**

Anthony Robinson (Robinson), who is represented by a public defender, petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) that denied his request for administrative relief. Robinson argues he is entitled to credit for time spent in a community corrections facility and an inpatient treatment facility. He also seeks a remand for a hearing on his claim for additional credit for unspecified time periods spent in custody. Upon review, we affirm.

## I. Background

Following a conviction on drug and assault-related charges, Robinson was released on re-parole to Kintock-Erie Community Corrections Facility (Kintock) on March 22, 2012. While there, Robinson completed an initial 60-day "booster program" for violent offenders, which included a 30-day blackout period, before transferring to the work-release phase of residency. Certified Record (C.R.) at 219.

He successfully completed the program on June 7, 2012, and was released from Kintock to an approved private residence.

In the following months, Robinson repeatedly tested positive for drugs. On January 3, 2013, he was sent to Luzerne Treatment Center (Luzerne), an inpatient substance abuse treatment facility. On February 7, 2013, before the maximum sentence date on his original sentence expired, Robinson absconded from Luzerne before successful completion of the program. The Board declared him delinquent the following day.

On July 12, 2013, the Board detained Robinson for a technical parole violation (absconding). The next day, Robinson was arrested on new conspiracy and drug-related charges (First New Offense). Thereafter, the Board recommitted him as a technical parole violator. In December 2013, while in custody on the technical parole violation, Robinson was charged with attempted murder and firearm offenses (Second New Offense). He did not post bail.

In January 2016, Robinson pled guilty to both the First New Offense and the Second New Offense, and he was sentenced to a term of imprisonment. His new sentences included an unspecified credit for time served. C.R. at 94. He remained in custody. Subsequently, the Board recommitted Robinson as a convicted parole violator and recalculated his maximum sentence date to March 22, 2017.

Based on the new convictions and technical parole violations, a hearing examiner held a parole revocation hearing in April 2016. Robinson, represented by a

public defender, testified at the hearing. At that time, he inquired about receiving credit while on house arrest, while he was in a halfway house, and for the six months he served in county prison. C.R. at 111-13. The hearing examiner explained that none of those circumstances warranted credit. Id.

In July 2016, Robinson filed an administrative remedies form challenging the calculation of his sentence when he did not receive credit for: six months' time served before his new convictions; two months in a halfway house (Kintock); and a month and a half in "a halfway back" program. C.R. at 164, 182. The Board responded on December 7, 2017, explaining its authority to recalculate his sentence based on his convictions. However, its response advised "the Board cannot render a final decision on the credit challenge at this time," and scheduled a hearing regarding his request for credit for time spent at Kintock and Luzerne. C.R. at 181 (emphasis in original).

In August 2018, a hearing examiner conducted an evidentiary hearing pursuant to Cox v. Pennsylvania Board of Probation & Parole, 493 A.2d 680 (Pa. 1985), regarding whether the community programs qualified as prison equivalents. The hearing was limited to Robinson's requests for 78 days in Kintock (March 22, 2012, to June 7, 2012) and 35 days in Luzerne (January 3, 2013, to February 7, 2013).[1] The director at Kintock (Director) and the supervisor at Luzerne (Supervisor), testified about the conditions at each facility. Robinson also testified.

---

[1] Robinson also noted he raised a third basis for credit for 11 months and 11 days, covering unspecified dates. Certified Record (C.R.) at 214. However, because the hearing notice listed only his challenges as to the denial of credit for time spent at Kintock and Luzerne, the hearing was limited to whether Robinson was entitled to credit for the specified time he resided at those facilities. Id. at 216.

The hearing examiner determined that Robinson's testimony regarding the conditions at each facility "actually proved multiple facts (no bars on doors, no fences, unescorted passes) that disproved his case." C.R. at 206. Although the hearing examiner concluded that Luzerne, as an inpatient facility, was more restrictive than Kintock, he concluded that neither facility constituted sufficient restrictions on Robinson's liberty to warrant credit. Adopting the hearing examiner's findings and conclusions, the Board denied the appeal. Robinson appealed the Board's decision denying credit for his time at Kintock and Luzerne, and requested another evidentiary hearing as to his other undated credit request. C.R. at 253.

The appeal panel affirmed the Board's recalculation order and denied Robinson's administrative appeal. Specifically, it agreed with the Board's finding that Robinson was not entitled to credit for the time he resided at Kintock or Luzerne. C.R. at 268. The Board also denied Robinson credit for his incarceration from July 13, 2013, to January 19, 2016, because he was detained on the new criminal charges *and* the Board's detainer or solely on the new criminal charges. See Gaito v. Pa. Bd. of Prob. & Parole, 412 A.2d 568 (Pa. 1980). Robinson now petitions for review.

## II. Discussion

On appeal,[2] Robinson argues he is entitled to credit for the 78 days he resided at Kintock (March 22, 2012 to June 7, 2012), and for the 35 days he resided at Luzerne (January 3, 2013, to February 7, 2013). He also seeks another evidentiary hearing regarding his other credit requests covering unspecified dates.

---

[2] Our review of a Board's decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether the constitutional rights of the parolee were violated. Detar v. Pa. Bd. of Prob. & Parole, 890 A.2d 27 (Pa. Cmwlth. 2006).

4

## A. Residential Facilities as Prison Equivalents

Section 6138(a)(2) of the Prisons and Parole Code (Parole Code) provides that recommitted convicted parole violators "shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and … shall be given no credit for the time at liberty on parole." 61 Pa. C.S. §6138(a)(2). The phrase "at liberty on parole" is not defined by the Parole Code. Harden v. Pa. Bd. of Prob. & Parole, 980 A.2d 691, 696 (Pa. Cmwlth. 2009) (en banc). However, in Cox, our Supreme Court determined that to overcome the presumption against crediting time spent in a treatment facility, the parolee bears the heavy burden of establishing "the restrictions on [his] liberty [at the facility] were the equivalent of incarceration." Id. at 683 (emphasis added).

Specifically, to merit credit, the parolee's time at the facility must be involuntary and the facility must be sufficiently restrictive to constitute a prison equivalent. Harden. This Court holds: "The most important factors in determining whether a program is sufficiently restrictive so as to be equivalent to incarceration are 'whether the … resident … is locked in and whether the resident may leave without being physically restrained.'" Medina v. Pa. Bd. of Prob. & Parole, 120 A.3d 1116, 1120-21 (Pa. Cmwlth. 2015) (en banc) (emphasis in original) (citations omitted). We consider security of the facility, including physical barriers and staff's ability to impose restraints, restrictions on and monitoring of a resident's movement within and ability to leave the facility, and the resident's access to services off-site (e.g., shopping, barber, church, medical care). Harden; Detar v. Pa. Bd. of Prob. & Parole, 890 A.2d 27 (Pa. Cmwlth. 2006) (that facility was unlocked, lacked fencing, and did not prevent patients from leaving showed facility was not prison equivalent).

5

This Court recently considered the restrictions at Kintock and Luzerne, and whether the facilities qualified as prison equivalents. See Lee v. Pa. Bd. of Prob. & Parole (Pa. Cmwlth., No. 1506 C.D. 2018, filed Sept. 24, 2019), 2019 WL 4620482 (unreported).[3] In Lee, the parolee spent four months at Kintock before he was sent to Luzerne after testing positive for drugs. The Board denied the parolee credit for his time spent at both treatment facilities based on the following conclusions: he was free to leave without restraint; he could leave unescorted (i.e., to attend medical appointments, to see family, and to run errands); and he would be charged with a parole violation, not criminal escape, upon leaving without permission.

The Lee Court affirmed the Board's order and held the conditions at the same facilities now at issue, Kintock and Luzerne, were not sufficiently restrictive to qualify as prison equivalents. While persuasive, our decision in Lee is not dispositive; we analyze whether the conditions of confinement for a parolee are sufficiently similar to incarceration on a case-by-case basis. Harden.

## 1. Kintock

Robinson asserts he is entitled to credit for his time spent at Kintock from March 22, 2012, to June 7, 2012. Alternatively, at a minimum, Robinson asserts he is entitled to credit for the 30-day blackout period and successful completion of the drug treatment program at Kintock.

Here, the record substantiates, through Director's credited testimony, that residents were allowed to move unescorted both inside and outside the facility.

---

[3] We cite this case for its persuasive value in accordance with Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

Although the doors are locked, the purpose is to keep others out, not to keep the residents in. C.R. at 232. As such, locked doors are insufficient to show the facility's restrictions were prison-like. See Willis v. Pa. Bd. of Prob. & Parole, 842 A.2d 490 (Pa. Cmwlth. 2004) (director's testimony that doors were locked to keep people out, but did not prevent residents from leaving, did not demonstrate the facility's restrictions were a prison equivalent).

Further, Director confirmed that a parolee may leave the facility without an escort, and facility staff is not permitted to restrain the parolee from leaving or his movements. C.R. at 232. In addition, parole officers, not police, are contacted if a resident leaves. As a result, a resident that leaves a facility is charged with a technical parole violation, not with criminal escape. This circumstance supports a finding that the facility's restrictions are not the equivalent of prison. See Wagner v. Pa. Bd. of Prob. & Parole, 846 A.2d 187 (Pa. Cmwlth. 2004).

Robinson was not subject to specific supervision or monitoring that limited his activities for most of his time at Kintock. Based on Kintock's sign-out sheets, Director confirmed Robinson liberally used passes for unescorted trips outside the facility. C.R. at 234.

As the hearing examiner noted, there are "no bars… no fences … no [Department of Corrections] staff, [n]o escort for passes," and only a panic bar on the front door. C.R. at 205. Based on these characteristics of the facility, and that Robinson was free to move within the facility, as well as leave for personal errands, we agree with the Board that Kintock was not a prison equivalent.

7

However, Robinson emphasized the initial 30-day blackout period at Kintock was sufficiently restrictive to qualify as confinement for credit purposes. This Court recognizes a distinction between initial blackout periods and the remaining time spent in a rehabilitation program, as time spent during blackout periods may be sufficiently restrictive to warrant credit. See Torres v. Pa. Bd. of Prob. & Parole, 861 A.2d 394 (Pa. Cmwlth. 2004) (en banc). Cf. Gray v. Pa. Bd. of Prob. & Parole (Pa. Cmwlth., No. 579 C.D. 2008, filed Oct. 30, 2008), 2008 WL 9405260 (unreported) (testimony that parolee could leave facility unescorted during the blackout period proved the facility's characteristics were not equal to prison).

In Torres, this Court considered the conditions placed on a parolee during the first 45 days in an inpatient drug rehabilitation facility. During the 45-day period, a parolee was only permitted to leave to attend drug and alcohol rehabilitation meetings. Further, facility employees transported the parolee to and from the meetings, but when a parolee left without permission, the parole officer was notified and treated the parolee as a technical parole violator, not an escapee. In reversing the Board's denial of credit for the 45-day period, we reasoned:

> that a parolee who has been forbidden generally to leave a particular inpatient drug and alcohol rehabilitation facility for a specified period for which credit is sought, who is under 24-hour supervision during the specified period and who is not permitted to make required trips outside of the facility without an escort cannot reasonably be described as being "at liberty on parole."

Id. at 401.

Here, during the blackout period, Robinson claimed he could leave only for drug treatment classes, to which he was transported by group busing. But he

8

acknowledged he was otherwise unescorted and was not monitored. Director testified that within "four days of his arrival," C.R. at 232, during the blackout period, Robinson signed out of the facility almost daily, going to "multiple locations, including religious passes, the Gallery Mall, probation, health centers, treatment …." C.R. at 234.

Because Robinson could use passes to run errands, attend church, and go to the gym during the blackout period, his restrictions during that time were not the equivalent of prison. Gray. Further, unlike the conditions imposed in the 45-day period in Torres, during the blackout period at Kintock, Robinson was not under 24-hour supervision, and he repeatedly left the facility without an escort. C.R. at 234.

The evidence supports the Board's findings that the restrictions at Kintock were not sufficient to qualify as a prison equivalent, even during the blackout period. Accordingly, we uphold the Board's denial of credit for the time Robinson resided at Kintock (March 22, 2012, to June 7, 2012).

**2. Luzerne**

Robinson argues he is entitled to his time spent at Luzerne because he was involuntarily placed there for a technical parole violation, and while there, he could not leave the facility or make phone calls. Citing Bennett v. Pennsylvania Board of Probation & Parole, 505 A.2d 1050 (Pa. Cmwlth. 1986), he asserts he should receive credit for "time spent in drug and alcohol treatment." Pet'r's Br. at 14.

9

Robinson contends that the involuntary nature of his placement in Luzerne for inpatient treatment demonstrates his time there qualified as confinement. While Bennett held a parolee was *not* entitled to credit for time spent in an inpatient alcohol counseling program where the parolee had a choice of inpatient or outpatient therapy as a condition of parole, it does not follow that involuntary inpatient drug treatment equates to incarceration. To the contrary, regarding inpatient treatment facilities, we have held:

> Facilities are not prison-like if they lack fences or have fences with gates that open from the inside; have doors and windows locked from the outside, not the inside, to prevent entry not exit; lack guards stationed to prevent residents from leaving; and do not attempt to use physical force by staff members to stop an inpatient from leaving.

Harden, 980 A.2d at 699 (holding inpatient residential treatment facility lacked characteristics of confinement to warrant credit on sentence); see Jackson v. Pa. Bd. of Prob. & Parole, 568 A.2d 1004, 1006 (Pa. Cmwlth. 1990) (unlocked doors to hospital, lack of fencing around the facility and hospital does nothing to stop patients from leaving). We also consider treatment of the parolee, and whether it differs from treatment of other inpatients, "with the exception that, if a parolee were to leave the hospital before completing the program, the hospital would notify the parole authorities." Jackson, 568 A.2d at 1006.

Here, Supervisor testified that Luzerne's facility doors are not locked and residents are free to leave without fear of physical restraint. C.R. at 242. Unlike incarceration, at Luzerne, Robinson could have food delivered on the weekends. Also, Luzerne staff contacts parole officers, not police, when a parolee absconds. Crucially, when Robinson left Luzerne before completing treatment, he was "only

10

charged as an absconder[,] not [with] a new criminal charge for escape." C.R. at 206 (Evidentiary Hearing Report). These characteristics show the conditions of confinement at Luzerne are not sufficiently similar to incarceration to merit credit for time Robinson spent there. Harden; Meehan v. Pa. Bd. of Prob. & Parole, 808 A.2d 313 (Pa. Cmwlth. 2002) (affirming Board's denial of credit when evidence showed that despite close monitoring, no one on staff could restrain a parolee if he attempted to walk out, and he would be treated as a parole violator); Jackson.

Because we discern no abuse of discretion by the Board in determining Robinson's time in Luzerne was not sufficiently restrictive to qualify as confinement time, we uphold the Board's decision to deny Robinson's credit request for time spent at Luzerne (January 3, 2013, to February 7, 2013).

## B. Outstanding Credit Request

Additionally, Robinson makes conflicting claims for additional credit. At one point, he claims credit for the period July 12, 2013, to February 9, 2016, based on prosecutors' alleged agreements that his sentences on the new convictions would run concurrent to his "Parole Violation sentence." Pet'r's Br. at 2. The Board argues that such a concurrent sentence would be illegal, citing Kerak v. Pennsylvania Board of Probation & Parole, 153 A.3d 1134 (Pa. Cmwlth. 2016) (en banc).

Elsewhere in his written argument, Robinson requests a remand for another evidentiary hearing on the custodial nature of three periods whose dates are unspecified: 11 months and 11 days; time spent at an unidentified halfway house at

11

a treatment center; and time on house arrest while on an ankle monitor. Pet'r's Br. at 8, 9, 10, 17. The Board contends Robinson waived this issue.

As to the alleged negotiated concurrent sentence claim, we agree with the Board that even if true, such a sentence would be illegal, and the Board would not be required to comply with it. Kerak (citing 61 Pa. C.S §6138(a)(5); Board properly determined violator's new sentence and backtime owed on original sentence were to be served consecutively; sentencing judge has no authority to order otherwise).

As to credit for other unspecified periods, we agree Robinson waived this issue. The record shows that during the revocation hearing, Robinson requested credit for time spent at an unnamed halfway house and while he was on house arrest on an ankle monitor. C.R. at 110-12. He also sought credit for six months in Philadelphia County prison. C.R. at 113. Robinson later referred to this six-month period as time served on his Philadelphia County sentence. C.R. at 164, 182. During the Cox hearing, he referred to his prior credit request for 11 months and 11 days.[4] Also at that time, Robinson connected this 11 month and 11 days credit request to his negotiated guilty plea. C.R. at 215.

Because counsel lacks "essential facts" regarding whether Robinson was "in custody or constructive custody" and the record lacks "facts detailing the

_____

[4] His counsel at the Cox hearing, who is also his current counsel on appeal, explained that Robinson intended to raise three credit challenges: (1) as to time spent at Kintock; (2) as to time spent at Luzerne; and (3) as to 11 months and 11 days, without specifying the dates to which the period corresponds. Although Robinson was ready to testify about the third purported basis for credit, the hearing examiner restricted the hearing to the issues listed on the hearing notice, to "determine the custodial nature of [Robinson's] stay at: Kintock … and Luzerne." C.R. at 200. Counsel advised he would "refile" concerning this unarticulated third issue. C.R. at 216.

12

location of [Robinson] and the dates of said 11 months and 11 days," he seeks a remand to the Board to hold a hearing to develop facts related to this credit challenge. That counsel lacks sufficient facts regarding the basis for a credit challenge at the appellate stage illustrates the deficiency in Robinson's credit request.

Although it is clear that Robinson requested credit for a period of time that did not correspond to time spent at either Kintock or Luzerne throughout the administrative proceedings, there is a lack of clarity regarding the basis for the credit requested. From our careful review of the record, this Court is unable to discern either the timeframe or the type of confinement to which the credit request pertains. Accordingly, we decline to grant Robinson a remand for a hearing regarding his vague credit request.

The Board's regulations require that issues must be "present[ed] with accuracy, brevity, clearness and specificity [as to] whatever is essential to a ready and adequate understanding of the factual and legal points requiring consideration …." 37 Pa. Code §73.1(a)(3). A parolee's failure to specify the basis for credit, as by reference to time periods or documents supporting a credit request to the Board, may result in waiver of the issue on appeal. See Headley v. Pa. Bd. of Prob. & Parole (Pa. Cmwlth., No. 2553 C.D. 2015, filed May 2, 2017), 2017 WL 1629441 (unreported); see also Jackson v. Pa. Bd. of Prob. & Parole, 781 A.2d 239 (Pa. Cmwlth. 2001) (inmate failed to specify facts regarding rehabilitation program which was the basis for credit against his maximum expiration date of sentence and so did not meet burden of including facts or a legal basis for the relief he seeks).

Robinson's credit request is not set forth with sufficient particularity to afford notice to the Board of the amount of time at issue, or the dates to which the credit request refers, or the reason for the credit request (such as conditions of confinement equaling incarceration). Headley. Had Robinson stated the dates to which the credit corresponded, or confirmed the basis for the credit (time-served, house arrest or other halfway house), then he may have adequately preserved his credit challenge on the vague third ground. As it stands, he did not preserve this credit challenge as explained above, such that we deem the issue waived. Id.; see McCaskill v. Pa. Bd. of Prob. & Parole, 631 A.2d 1092 (Pa. Cmwlth. 1993) (statement that maximum sentence date was wrong was insufficient for appeal).

To the extent there is an insufficient record regarding the essential facts underlying the credit challenge, the fault lies with Robinson, not the Board. Robinson needed to state the grounds for his credit request with sufficient particularity at the administrative stage, not to this Court on appeal. McCaskill.

### III. Conclusion

Because the Board did not abuse its discretion in determining that both Kintock and Luzerne lacked sufficient custodial aspects to characterize time spent there as confinement rather than at liberty, it did not err in denying Robinson's credit requests. Moreover, Robinson did not sufficiently describe his purported request for other credit to enable the Board's consideration of it. As such, that issue is waived. For these and the foregoing reasons, we affirm the Board's order.

_____
ROBERT SIMPSON, Senior Judge

14

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Anthony Robinson,              :
             Petitioner   :
               :
       v.             :   No. 236 C.D. 2019
               :
               :
Pennsylvania Board of Probation   :
and Parole,            :
          Respondent  :

## O R D E R

**AND NOW**, this 21st day of November 2019, the order of the Pennsylvania Board of Probation and Parole is **AFFIRMED**.

_____
ROBERT SIMPSON, Senior Judge