IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ricki Pinkins, : 
                Petitioner : 
                : 
          v. : No.  793 C.D. 2019
                : Submitted: February 7, 2020
Pennsylvania Board of : 
Probation and Parole, : 
                Respondent : 


BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE J. ANDREW CROMPTON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON                       FILED:  May 11, 2020


Ricki Pinkins (Pinkins), who is represented by a public defender, petitions for review of an order of the Pennsylvania Board of Probation and Parole (Board) that denied his request for administrative relief. Pinkins argues that the Board erred by relying on the language of his commutation charter as a basis to deviate from the presumptive recommitment range for his new offense and as a basis for not establishing a new parole eligibility date. Pinkins also asserts that the Board erred by refusing to award credit for his time spent at liberty on parole. Upon review, we affirm the Board's order and advise the Board to notify the Pennsylvania Board of Pardons (Board of Pardons) of Pinkins' Ohio conviction.

# I. Background

On June 2, 1983, Pinkins was sentenced to life imprisonment for second degree murder and a concurrent term of five to ten years' imprisonment for robbery and criminal conspiracy to commit robbery. Certified Record (C.R.) at 1-3; Pet'r's Br. at 9. On January 9, 2003, Pennsylvania Governor Mark Schweiker commuted Pinkins' life sentence after the Board of Pardons recommended commutation. C.R. at 1; Pet'r's Br. at 9. The commutation reads, in pertinent part:

> Therefore, know ye, That in consideration of the premises and by virtue of the authority vested in me by the Constitution, I have commuted the sentence of the said Ricki D. Pinkins from a term of life imprisonment to a term of 22 [years] to life upon the following conditions: (1) that Ricki D. Pinkins shall not be released on parole until after he has served at least one year in a prerelease center unless he cannot be appropriately transferred to a prerelease center due to a certified terminal illness; and (2) in the event Ricki D. Pinkins is ever convicted of any criminal offense or has violated the terms and conditions of his parole after …[January 9, 2003], this grant of clemency will thereby automatically be rendered null and void.

Pet'r's Br. at 9.

On February 18, 2004, Pinkins was released on parole from the Sharon Community Corrections Center to an approved residence. In 2011, the Board permitted Pinkins to transfer his supervision to Youngstown, Ohio to reside with his wife. C.R. at 8-9, 11-19; Pet'r's Br. at 9. Progress reports from Ohio indicate that Pinkins was compliant with his supervision from 2012 to 2015. C.R. at 55. However, on June 9, 2016, Pinkins' supervising officer in Ohio advised the Board that Pinkins had been arrested by the Mahoning County Drug Task Force for the offense of trafficking in cocaine. C.R. at 20. A secret indictment revealed that

Pinkins had six separate charges for trafficking in cocaine for offenses allegedly occurring between March 5, 2016, and May 18, 2016. Four of the charges were graded as first-degree felonies and two were graded as third-degree felonies, and Pinkins was incarcerated at the Mahoning County Justice Center on an unposted bond of $100,000. C.R. at 21-25.

On September 5, 2017, Pinkins pled guilty to one count of trafficking in cocaine, a felony of the third degree. C.R. at 21, 26. In exchange for his plea, the State of Ohio agreed to seek dismissal of the remaining five charges. C.R. at 26. The court agreed, and on October 9, 2017, the judge in Pinkins' case sentenced Pinkins to 30 months in prison with credit for 145 days for time spent in custody. Pinkins was directed to report to the Mahoning County Justice Center to serve his sentence on December 1, 2017. C.R. at 49, 55.

On November 1, 2017, the Board filed a "Warrant for Arrest of a Paroled Prisoner," and on November 8, 2017, Pinkins waived extradition to Pennsylvania. C.R. at 43, 46-47. On November 21, 2017, Pinkins signed his "Notice of Charges and Hearing" in conjunction with his revocation hearing. C.R. at 52-53. He waived his hearing and right to counsel and admitted to his Ohio conviction. C.R. at 51. In the Board's hearing report, two panel members[1] recommended that Pinkins be recommitted, as a convicted parole violator (CPV), to a state correctional institution to serve the remainder of his unexpired life sentence. The panel members

---

[1] Section 6113(b) of the Prisons and Parole Code states, in pertinent part: "The board may make decisions on parole, reparole, return or revocation in panels of two persons. A panel shall consist of one board member and one hearing examiner or of two board members." 61 Pa.C.S. §6113(b).

3

further recommended that the Board not award Pinkins any credit for his time spent at liberty on parole for two reasons: (1) poor supervision; and (2) the language of his commutation. C.R. at 59, 64. On January 23, 2018, the Board issued a "Notice of Board Decision and Order to Recommit," recommitting Pinkins as a CPV and directing Pinkins to serve his unexpired life term. C.R. at 69-72; Pet'r's Br. at 12 and A-2, A-3.

On March 2, 2018, Pinkins, proceeding *pro se*, filed an "Administrative Remedies Form" challenging the imposition of backtime and challenging the Board's decision not to award him any credit for his time spent at liberty on parole. Pinkins also sought additional time to secure an attorney to assist with his appeal. C.R. at 73. On May 20, 2019, the Board affirmed its decision, citing the language of the commutation as the basis for Pinkins' recommitment. C.R. at 78; Pet'r's Br. at 12 and A-1. Pinkins now petitions this Court for review.

## II. Contentions

On appeal,[2] Pinkins argues the Board erred by (1) relying on the language of his commutation "as a basis to deviate from the presumptive recommitment range for [his] new offense and to not establish a new parole eligibility date" and (2) by refusing to award credit for time at liberty on parole "where the reasons were either legally insufficient and/or unsupported by the evidence of record." Pet'r's Br. at 8.

---

[2] Our review of a Board decision is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether the constitutional rights of the parolee were violated. *Detar v. Pa. Bd. of Prob. & Parole*, 890 A.2d 27 (Pa. Cmwlth. 2006).

## A. Presumptive Recommitment Range

Pinkins argues that the Board erred when it relied upon the language of his commutation to deviate from the presumptive recommitment range for his conviction of trafficking in cocaine in Ohio. Pinkins asserts that his Ohio conviction would be graded as a felony, punishable by 10 years in prison in Pennsylvania, and that the presumptive range for recommitment is 18 to 24 months. *See* 35 P.S. §780-113(a)(30), (f)(1.1);[3] 37 Pa. Code §75.2; *see also Abrams v. Pa. Bd. of Prob. & Parole*, 935 A.2d 604 (Pa. Cmwlth. 2007); Pet'r's Br. at 16.

In support of his position, Pinkins cites 37 Pa. Code §75.1(a), which states: "[p]resumptive ranges of parole backtime to be served will be utilized if a parolee is convicted of a new criminal offense while on parole and the Board orders recommitment as a CPV after the appropriate revocation hearing." Pinkins further relies on 37 Pa. Code §75.1(c), which states: "[t]he Board may deviate from the presumptive range or determine that recommitment should not occur, provided written justification is given" to assert that the presumptive range for a felony drug law violation, for which the statutory maximum sentence is 10 years, is 18 to 24 months. *See* 61 Pa.C.S. §6137(i); Pet'r's Br. at 15-16 (also citing 37 Pa. Code §75.2).

Pinkins explains that two panel members identified the correct presumptive range in the Board's hearing report but that the members recommended he serve the balance of his unexpired life term because his Ohio conviction voided

---

[3] The Controlled Substance, Drug, Device and Cosmetic Act, Act of April 14, 1972, P.L.233, *as amended,* 35 P.S. §780-113(a)(30),(f)(1.1).

the 2003 commutation order. C.R. at 59; Pet'r's Br. at 16. Pinkins submits that the Board cannot cite the language of the commutation order as the basis for (1) departing from the presumptive range of 18-24 months, (2) not establishing a parole minimum date, and (3) recommitting him to his unexpired life sentence. Pet'r's Br. at 16.

Further, Pinkins argues that, in instances in which an inmate's sentence is commuted from life to life on parole,[4] it becomes the Board's duty to (1) supervise the parolee on a weekly basis for the first six months of parole; and (2) "to have any violations of a condition of parole immediately made known to the Board of Pardons." 61 Pa.C.S. §6137(a)(4), (5). Pinkins adds that the Board of Pardons "will then decide, on a case-by-case basis, whether to hold a public hearing regarding the suspected violation of the conditional pardon or commutation. After public hearing, a majority of the Board may recommend to the Governor that clemency be revoked." 37 Pa. Code §81.301(f).

Pinkins concedes that his commutation was conditioned on him never being convicted of a new criminal offense or violating the terms of his parole. However, he asserts that in the immediate situation, the Board had an obligation to notify the Board of Pardons in order to permit it to follow the procedure outlined in its (*i.e.*, the Board of Pardons) regulations. Pinkins further asserts that nothing in Section 6137 of the Prisons and Parole Code suggests that the Board has the statutory

---

[4] As Pinkins states, and we acknowledge: "The Pennsylvania Constitution places the power to pardon or commute a life sentence solely within the province of the Governor upon the unanimous recommendation in writing of the Board of Pardons after full hearing in open session, upon due public notice." Pet'r's Br. at 17 (citing Pa. Const. art. IV, §9(a)).

authority to depart from the guideline ranges automatically and to re-impose a life sentence based on its interpretation of the language of his commutation.

## B. Denial of Credit for Time Spent at Liberty on Parole

Pinkins acknowledges that Section 6138(a)(2) of the Prisons and Parole Code provides that parolees who are recommitted as CPVs "shall be reentered to serve the remainder of the term which the parolee would have been compelled to serve had the parole not been granted and, except as provided under paragraph [(a)(2.1)], shall be given no credit for time at liberty on parole." 61 Pa.C.S. §6138(a)(2). Pinkins further acknowledges that under paragraph (a)(2.1), the Board has discretion to award credit to a parolee recommitted as a CPV unless "[t]he crime committed during the period of parole or while delinquent on parole is a crime of violence as defined in 42 Pa.C.S §9714(g)…or a crime requiring registration [under SORNA]." Pet'r's Br. at 18; *See* 61 Pa.C.S. §6138(a)(2.1)(i). However, citing *Pittman v. Pennsylvania Board of Probation & Parole*, 159 A.3d 466, 475 (Pa. 2017), Pinkins asserts that when said exception applies, "the Board must provide a contemporaneous statement explaining its reason for denying a CPV credit for time spent at liberty on parole." Pet'r's Br. at 18-19.

Pinkins contends that the Board should have provided a contemporaneous reason for its determination to deny him time spent at liberty on parole. Pinkins further maintains that his new conviction for trafficking in cocaine, and its Pennsylvania equivalent of possession with intent to deliver, does not constitute a violent offense, and as such, the Board should have provided a contemporaneous reason for its decision to deny him credit for time spent at liberty

7

on parole. Pinkins also notes that the Board's hearing report indicated that two panel members recommended denying him credit for time spent at liberty on parole and stated "poor supervision" as the justification. *See* C.R. at 59; Pet'r's Br. at 19. However, Pinkins acknowledges that, in the "Additional Information" section of the hearing report, the two panel members stated, in pertinent part, that "Mr. Pinkins' new drug conviction and [his] parole revocation both qualify as a basis to render the grant of clemency null and void per the commutation order. Therefore, I do not recommend that the Board award him any credit for time at liberty on parole." C.R. at 64; Pet'r's Br. at 19. Pinkins states that, in the "Notice of Board Decision," the Board wrote "poor supervision" as the reason for not awarding any credit for time spent at liberty on parole, but Pinkins denies that the record supports he had a history of "poor supervision," where he spent over 13 years without any reported issues. Pinkins argues that the Board's reliance on "poor supervision" to deny him credit represents an abuse of the Board's discretion. C.R. at 55; Pet'r's Br. at 20.

Based on the foregoing, Pinkins contends that the Board had an obligation to advise the Board of Pardons of his parole violation and then to proceed to exercise its typical discretion in parole matters until the Board of Pardons followed its regulatory procedures. Thus, Pinkins asserts that the Board's conclusions are not supported by substantial evidence and that it abused its discretion. Consequently, Pinkins contends that the Board's determination should be reversed. Pet'r's Br. at 21.

## C. **Collateral Attack on Commutation**

In response to Pinkins' contentions on appeal, the Board argues that Pinkins wants this Court "to ignore the conditions placed on the grant of clemency by the Board of Pardons as well as the consequences of his breach." Resp't's Br. at 5. The Board notes that Pinkins' arguments concerning the establishment of a review date and the award of time credit are important issues in many similar appeals. However, the Board maintains that this case is different because Pinkins' commutation charter specifically states that his grant of clemency is to be automatically rendered null and void if he is convicted of a new criminal offense. C.R. at 1; Resp't's Br. at 5-6. In addition, the Board notes that "per the terms of his commutation charter, Pinkins is now an inmate serving a life sentence, such that the Board no longer has the authority to release him on parole." Resp't's Br. at 6; *see* 61 Pa.C.S. §6137(a). Thus, the Board argues that it would serve no purpose for it to review Pinkins for parole because it has no authority to release him. The Board further maintains that the issue of not awarding Pinkins credit for time spent at liberty on parole has no "real world impact" on his situation in that his maximum sentence when he was released was life, and his parole violation maximum is life. Thus, even if Pinkins was eligible for parole, a Board determination on whether he should be awarded credit under 61 Pa.C.S. §6138(a)(2.1) of the Prisons and Parole Code will have no impact on when his life sentence will expire, *i.e.*, a Board determination on this issue will neither shorten nor lengthen his term of life. Resp't's Br. at 6.

The Board further asserts that there is nothing in the record to support Pinkins' contention that the Board did not notify the Board of Pardons about his

9

violation as required by 61 Pa.C.S. §6137(a)(5)(ii)[5] so that it can proceed to follow the procedure in its regulations at 37 Pa. Code §81.301(f).  Resp't's Br. at 6-7. Further, the Board posits that it does not appear this section of the regulation even applies in the present case.  The Board of Pardons' regulations state:

> If it is the [Board of Pardons'] desire that the commutation or pardon be conditional, any recommended Warrant of Commutation or Charter of Pardon presented to the Governor shall include the following language:
>
> Subsequent to this date, if it is determined, upon public hearing by the Board of Pardons that (name) has committed a probation or parole violation or has been convicted of a new criminal offense, this grant of clemency may be rendered null and void by myself or by my successors in office.

37 Pa. Code §81.301(e).[6]

> When notified of a subsequent criminal offense conviction, or probation or parole violation, the Secretary will inform the Board.  The Board will then decide, on a case-by-case basis, whether to hold a public hearing regarding the suspected violation of the conditional pardon or commutation.  After public hearing, a majority of the Board may recommend to the Governor that clemency be revoked.

37 Pa. Code §81.301(f).

---

[5] This provision states, in pertinent part, that "a parolee subject to paragraph (4) *shall have any violations of a condition of parole immediately known to the Board of Pardons***.**"  (Emphasis added.)

[6] Although we are mindful that some of the most recent gubernatorial commutations of life sentences have included language less restrictive than the language contained in Pinkins' commutation, as permitted by the Board of Pardons' regulations, the commutation language in the instant case is wholly lawful.  As noted in *Case of Flavell*, 8 Watts & Serg. 197 (Pa. 1844): "the governor may annex to a pardon any condition whether precedent or subsequent not forbidden by law, and it lies upon the grantee to perform the condition."

The Board argues that the Pinkins' commutation charter does not contain the language specified in 37 Pa. Code §81.301(e). Instead, the charter in Pinkins' case makes it clear that the grant of clemency was to "automatically be rendered null and void" by a new conviction, and as such, it strongly indicates that the Board of Pardons did not intend for the procedure in 37 Pa. Code §81.301(f) to apply. Resp't's Br. at 7-8.

The Board contends that Pinkins could possibly have addressed the language of his clemency prior to committing another crime. However, he did not, and by this appeal he is, in effect, arguing that his commutation charter, which was signed and duly effectuated by the Governor, is flawed "or should be modified by the [Board], or this Court, in the context of a parole violation proceeding." Resp't's Br. at 8. Thus, it is "a collateral attack on the terms of his grant of clemency." *Id*. The Board notes that it is not aware of any other case in which any court has made a determination on the validity of a Board of Pardons' order in the context of a parole revocation appeal. However, the Board points out that our Supreme Court and this Court have both held that "an action against the [Board] is not a valid means to collaterally attack a conviction." *Id.*; *See Com. ex rel. Davis v. Pa. Bd. of Prob. & Parole*, 398 A.2d 992 (Pa. 1979).

The Board asserts that, if Pinkins believes it has not carried out its duty of reporting his violation to the Board of Pardons, he can file an action in mandamus to compel it to do so. Further, the Board maintains that if Pinkins believes the Board of Pardons is required to rehear his case, he should be required to address his claim to the Board of Pardons. Resp't's Br. at 9.

11

In sum, the Board concludes that its decision is supported by substantial evidence of record, is in accordance with the law, and does not violate Pinkins' constitutional rights, and, thus, should be affirmed. Resp't's Br. at 10.

### III. Analysis

On the whole, we deem the Board's argument more compelling than Pinkins' position. We agree with the Board that Pinkins' claim may be more appropriately addressed to the Board of Pardons than to the Board. It is indisputable that Pinkins' 2003 commutation order from Governor Schweiker states that a subsequent violation would render his grant of clemency null and void. Given this clear language, it is warranted that the Board believed itself to be constrained in its options once Pinkins re-offended. This belief is not unfounded.

In addition to the explicit language of our Commonwealth's Constitution, the concept of the executive's power to grant pardons and commutations is a hallowed part of our history as a state and as a nation.[7]

---

[7] The history of the executive's power to grant pardons and commutations was eloquently addressed in a 1937 article in the *Fordham Law Review*:

> In America, the pardoning prerogative has not only been written into the national Constitution, but almost every state, by constitutional provisions and statutory enactments, has established the exercise of executive clemency as a principle of democratic government….

> At the time of the adoption of the Federal Constitution, American statesmen were most familiar with the prerogatives exercised by the king, so that obviously when the words "to grant pardon" were used in the Constitution of the United States, they conveyed to mind the authority as

Accordingly, the Board ascribed the proper weight and solemnity to the wording of the Governor's commutation order. Further, and as the Board accurately points out, once Pinkins' commutation was voided, he, once again, became an inmate serving a life sentence. Thus, the Board no longer retained any authority to release him on parole. *See* 61 Pa.C.S. §6137(a). In addition, we agree that it does not readily appear that the Board of Pardons' regulations apply where 37 Pa. Code §81.301(e) requires that a conditional commutation contain the discretionary language "this grant of clemency may be rendered null and void by myself or by my successors in office," where Pinkins' commutation order stated specifically that "this grant of clemency *will* thereby automatically be rendered null and void" should Pinkins ever be convicted of *any* criminal offense or violate the terms and conditions of his parole. C.R. at 1 (emphasis added). In light of the foregoing, the remainder of Pinkins'

---

exercised by the English crown. Hence, it may be truly stated that we adopted their principles respecting the operation and effect of a pardon, and relied on the early writing of the common law for rules prescribing the manner in which it is to be employed….

The general power to pardon criminal offenses against the sovereignty also includes the power to pardon conditionally, and to commute sentence. This extension is logically sound for the plenary power must necessarily embrace the lesser power…. But both the president and the governor are vested, by express grant, with the right to issue reprieves….

In short, then, it may be fairly stated that the pardoning power granted by our national and state constitutions is a symbol of enlightened civilization, and that its wise and judicious exercise by presidents and governors has raised the standard of our democracy toward the end that justice is finally administered in mercy, according to the highest ideals of…jurisprudence.

*The Pardoning Power of the Chief Executive*, 6 Fordham L. Rev. 255 (1937).

arguments appear wanting in that they are contingent on him establishing that the Board had latitude, in contrast to the facts in the present matter.

Nonetheless, we next address Pinkins' assertion that the Board erred by not giving him credit for his time spent at liberty on parole. Although Pinkins takes issue with the Board's contention that the reason for his recommitment may have been "poor supervision," we see this as merely one component of the justification relative to Pinkins' violation of the terms of his commutation. While Pinkins notes that he spent many years under supervision without incident, it is an inescapable conclusion that at some point, he did re-offend. To the extent that the term "poor supervision" was provided by the Board as a reason, we do not believe it obfuscates the Board's ultimate decision to revoke Pinkins' parole, nor does it detract from the justification for it. This is especially true in light of the Board's consistent position that the commutation order itself nullified the grant of clemency upon conviction for a subsequent criminal offense, as noted in two separate sections of the Board's hearing report and in its "Response to Administrative Remedies Form" mailed to Pinkins on May 20, 2019. C.R. at 59, 64, and 78.

Further, to Pinkins' contention that he should have been granted credit for his time spent at liberty on parole, we concur with the Board's position that "[e]ven if Pinkins was parole eligible, a Board determination on whether he should be awarded credit under Section 6138(a)(2.1) of the Prisons and Parole Code will have no impact on when his life sentence will expire. A determination by the Board on this issue will neither shorten nor lengthen his life." Resp't's Br. at 6. What

14

Pinkins is asking for is form over substance, since the concept of subtraction from a life sentence is meaningless.

Pinkins further argues that his conviction for a drug offense in Ohio should carry a presumptive range of 18-24 months of recommitment in Pennsylvania. However, here again, this position has little to no meaning in the context of the violation of the terms of the commutation order at issue in the present matter which, by its very language, terminated Pinkins' parole.

## IV.    Conclusion

Because the Board based its decision on the substantial competent evidence of record and did not commit an error of law, abuse its discretion, or violate the constitutional rights of Pinkins when it revoked his parole, we affirm the Board's order.

Although we affirm the Board's order, we acknowledge it is unclear from the record whether the Board notified the Board of Pardons in regard to Pinkins' Ohio conviction. While it does not have a material impact on the Board's determination, we note that the Prisons and Parole Code, 61 Pa.C.S. §6137(a)(5)(ii) states, in pertinent part: "[u]pon parole, a parolee…shall have any violations of a condition of parole immediately made known to the Board of Pardons." Thus, to the extent that Pinkins' appeal may be liberally read as a request for the provision of such notification to the Board of Pardons, and to the extent such notification may not have occurred, we advise the Board to notify the Board of Pardons of Pinkins'

Ohio conviction, and to provide a copy of this opinion and order to the Board of Pardons, within 30 days.

_____
J. ANDREW CROMPTON, Judge

Judge Cohn Jubelirer did not participate in the decision in this case.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Ricki Pinkins,                          :
                    Petitioner          :
                                        :
        v.                              :    No.  793 C.D. 2019
                                        :
Pennsylvania Board of                   :
Probation and Parole,                   :
                    Respondent          :

# **O R D E R**

AND NOW, this 11th day of May 2020, the order of the Pennsylvania Board of Probation and Parole (Board) is **AFFIRMED**.

FURTHER, in accordance with the foregoing Opinion, we advise the Board to notify the Board of Pardons of Petitioner's Ohio conviction, and to provide a copy of this Opinion and Order to the Board of Pardons within **30 days** of the date of this Order.

_____
J. ANDREW CROMPTON, Judge